# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2025

Lyle W. Cayce
Clerk

No. 24-50182

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ZACHARY LOPEZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CR-173-1

Before WIENER, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Defendant-Appellant Zachary Lopez challenges the constitutionality of his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the determination of his base offense level for sentencing. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-50182

## I

On September 24, 2023, the Midland Police Department received a report of shots fired in a residential neighborhood. Responding officers interviewed various witnesses, including Lopez, who stated that he heard gunshots but did not witness the shooting. Officers later obtained surveillance footage of the shooting from one of Lopez's neighbors. The video showed a car stopping in front of Lopez's house, the driver and Lopez engaging in a verbal altercation, and Lopez firing two shots at the vehicle after it began to drive away.

After identifying Lopez as the shooter, officers checked his criminal history and learned that he had prior felony convictions for harassment of a public servant and burglary of a habitation. Based on his criminal history and information about the presence of firearms, officers obtained and executed a search warrant for his house. Inside they found three firearms—a black Taurus G3c 9mm semi-automatic handgun, a Glock 23 .40 caliber handgun, and a black Ruger EC9s 9mm semi-automatic handgun—along with gun parts, marijuana, methamphetamine, and other drug paraphernalia. They also found two shell casings in the front yard. Lopez admitted that the guns and drugs were his and that he had fired a gun outside his home.

Lopez was charged in a one-count indictment with being a felon in possession of a firearm in violation of § 922(g)(1). He moved to dismiss the indictment, arguing that § 922(g)(1) "violat[ed] the Second Amendment on its face and as applied to [him]" under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). He also "preserve[d] for further review the question of whether § 922(g)(1) violates the Commerce Clause." After the district court denied his motion, Lopez pleaded guilty without a plea agreement.

No. 24-50182

The Presentence Report (PSR) noted that the guideline for a § 922(g)(1) violation is § 2K2.1 of the United States Sentencing Guidelines, which assigns a base offense level of 14. Finding the cross-reference at § 2K2.1(c)(1)(A) applicable however, it used the provision for attempted first-degree murder, § 2A2.1(a)(1), to assign Lopez a base offense level of 33. The PSR then deducted three levels for acceptance of responsibility, which reduced the offense level to 30. Combined with a criminal history category IV, the resulting guideline range was 135 to 168 months.

Lopez objected to the application of the cross-reference to determine his base offense level under the guideline for attempted first-degree murder, contending there was insufficient evidence to support it. At sentencing, he again argued that application of the cross-reference was not warranted because there was no evidence that he had the requisite specific intent to kill the driver when he shot at the car. The government responded by submitting the video, still photos from the video, and testimony from a detective.

The district court overruled Lopez's objections, concluding that the evidence showed "the Defendant intended to kill the occupants in the fleeing vehicle." It adopted the PSR in its entirety and sentenced Lopez to a within-guidelines sentence of 156 months, to be followed by three years of supervised release. Lopez timely appealed.

II

"We review preserved challenges to the constitutionality of a criminal statute *de novo*." *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014).

We also review preserved challenges to the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Koss*, 812 F.3d 460, 466 (5th Cir. 2016). Factual findings are entitled to great deference, meaning "a sentencing court's factual findings will be upheld if they are plausible in light

of the record as a whole[.]" *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *United States v. Richard*, 901 F.3d 514, 516 (5th Cir. 2018)). "[T]hey will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Richard*, 901 F.3d at 516). In other words, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (alteration in original) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

## III

Lopez first argues that § 922(g)(1) violates the Second Amendment as applied to him and facially.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. "That right, however, 'is not unlimited.'" *United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Under *Bruen*, courts must first determine whether the Second Amendment's plain text covers the defendant's conduct. 597 U.S. at 24. If covered, "the Constitution presumptively protects that conduct," and the burden then shifts to the government to demonstrate that regulating the defendant's conduct is "consistent with the Nation's historical tradition of firearm regulation." *Id.*

In *United States v. Diaz*, 116 F.4th 458, 468–72 (5th Cir. 2024), *petition for cert. filed* (U.S. Feb. 18, 2025) (No. 24-6625), we rejected an as-applied challenge to § 922(g)(1), finding that disarming an individual convicted of car theft fit within the Nation's historical tradition of regulating firearms. *Diaz* left open the possibility that as-applied challenges to § 922(g)(1) under the Second Amendment could succeed, depending on the predicate convictions and whether history and tradition support disarming individuals convicted of

4

those crimes. *Id.* at 470 n.4. We recently held in *Schnur*, however, that *Diaz* also forecloses an as-applied challenge by an individual convicted of a "theft-related" offense such as burglary. *See Schnur*, 132 F.4th at 870–71. Because one of Lopez's predicate convictions is burglary of a habitation, *Diaz* likewise forecloses his as-applied challenge.[1]

As for his facial challenge, Lopez concedes that it is foreclosed by *Diaz*. A facial challenger "must establish that no set of circumstances exists under which the statute would be valid," *Diaz*, 116 F.4th at 471 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), and *Diaz* found § 922(g)(1) constitutional as applied to the facts in that case. *Id.* at 471–72; *see also United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025) (recognizing that a facial challenge to § 922(g)(1) is foreclosed by *Diaz*).

## IV

Lopez also contends that § 922(g)(1) exceeds Congress's powers under the Commerce Clause to regulate interstate and foreign commerce.

Section 922(g) bars various classes of individuals from possessing firearms "in or affecting" interstate or foreign commerce. 18 U.S.C. § 922(g). Lopez argues that § 922(g)(1) exceeds Congress's power to regulate interstate and foreign commerce because it only requires that an object previously crossed state lines, and not that the defendant be engaged in the relevant market at the time of possession. As he concedes, this

---

[1] Lopez's alternative argument that *Diaz*'s as-applied analysis is "incorrect" and misinterprets Supreme Court precedent is also foreclosed. *See United States v. Medina-Cantu*, 113 F.4th 537, 539 (5th Cir. 2024) (per curiam), *cert. denied*, 145 S. Ct. 1318 (2025) (mem.) ("Under this circuit's rule of orderliness, a three-judge panel 'may not overturn another panel′s decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.'" (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021))).

argument was rejected in *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013), and is foreclosed under our caselaw. *See also United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020).

## V

Finally, Lopez contends that the district court erred in calculating the applicable sentencing guideline range because there was insufficient evidence to support application of § 2K2.1's cross-reference to the attempted first-degree murder guideline. He argues that he was only firing "in the general direction" of the car and there was no evidence he had the specific intent to kill the driver.

Under § 2A2.1(a)(1) of the Sentencing Guidelines, first-degree murder is "conduct that . . . would constitute first degree murder under 18 U.S.C. § 1111," U.S.S.G. § 2A2.1(a)(1), which in turn requires "malice aforethought." *United States v. Harrelson*, 754 F.2d 1153, 1172 (5th Cir. 1985); *see also United States v. Hernandez*, No. 24-50197, 2025 WL 1233130, at *5 & n.31 (5th Cir. Apr. 29, 2025) (per curiam) (unpublished) (discussing the mental states encompassed by term "malice aforethought"). Although our circuit "has not determined whether [§ 1111] requires a showing of *specific* intent for an *attempted* murder, a higher standard" than for first-degree murder, "[w]e have held that 'specific intent to kill could be inferred from a defendant firing a gun aimed at an individual.'" *Hernandez*, 2025 WL 1233130, at *5 & n.33 (alteration omitted) (collecting Fifth Circuit cases applying this standard).

Here, the video shows that an oral altercation occurred between Lopez and the driver of the car and, as the car drove away, Lopez pointed a gun at the car and began shooting. Lopez has not shown that this evidence is insufficient to establish a specific intent to kill. *See id.* at *5 (finding no clear error in applying first-degree murder cross-reference based on evidence of

defendant pointing his gun at victim and firing). At best, he offers a competing, permissible view of the evidence. But when the district court's choice is one of "two permissible views," it cannot be clearly erroneous. *Torres-Magana*, 938 F.3d at 216.

*     *     *

The district court's judgment of conviction is AFFIRMED.